## CARPENTER CHEMICAL CO. v. LANSDALE SILK HOSIERY CO.

(District Court, E. D. Pennsylvania. December 5, 1924.)

### No. 3135.

1. Patents ⟐328 — 1,500,026, process for treating silk stockings, issued to defendant as inventor's assignee, held substantially same as that assigned to plaintiff by same inventor.

Mendelsohn patent, No. 1,500,026, for method of treating silk stockings after manufacture, by process consisting of soaking them in water containing alum, and afterwards treating them with a solution of soap and water, issued to defendant as inventor's assignee, held, on motion for preliminary injunction, substantially the same as invention of similar process for treatment of silk in the thread or skein prior to manufacture into stockings, assigned by same inventor to plaintiff, for patent for which application had been made prior to application for defendant's patent.

2. Patents ⟐183—Preliminary injunction issued to restrain assignment of right to practice invention, but not to prevent defendant itself from practicing invention.

Where process covered by defendant's patent is shown, on motion for preliminary injunction, to be substantially the same as invention assigned by defendant's assignor to plaintiff, and where application for patent for invention assigned to plaintiff was made before application for defendant's patent, and where defendant is financially responsible, court will not by preliminary injunction prohibit the defendant from practicing the invention, but will enjoin the licensing or granting of such right to others.

In Equity. Suit by the Carpenter Chemical Company against the Lansdale Silk Hosiery Company. On motion for preliminary injunction. Granted in part.

Joseph J. Tunney, of Philadelphia, Pa., and Richard B. Cavanaugh, of New York City, for plaintiff.

John W. Speckman, of Philadelphia, Pa., and Irving M. Obrieght and Clair W. Fairbank, both of New York City, for defendant.

THOMPSON, District Judge. Upon an application filed April 4, 1924, patent No. 1,500,026 was on July 1, 1924, issued to the defendant, the Lansdale Silk Hosiery Company, as assignee of Edward Mendelsohn, the inventor. This patent is for a method of treating silk stockings to give them a more sheer appearance and greater strength, by a process consisting of soaking them in water containing about 5 per cent. by weight of alum and afterwards treating them with a solution of soap in water; the purpose being to harden and make more compact the fiber of the threads, preventing the fiber of the thread from catching in sharp objects, and enabling the thread to slide more freely in the woven stocking. The action of the soap upon the alum deposited in the threads of the stocking is claimed to form an insoluble coating.

The plaintiff claims that it is the rightful owner of the invention covered by the patent, by reason of the fact that the inventor, Mendelsohn, had, prior to the application for the patent, assigned to it the invention covered thereby and an application for a patent thereon long prior to the application for the patent issued. From the pleadings, the affidavits, and exhibits accompanying the motion for a preliminary injunction, I find the following facts:

Mendelsohn, prior to June 21, 1922, claimed to be the inventor and owner of a chemical formula to be used for the treatment of silk stockings or other fabric, so as to make them more sheer and durable. He negotiated with Irving S. Carpenter, of New York, and demonstrated the use of his formula for making an alum solution, with which he treated silk stockings by saturating them in the solution, and, after drying, washing the stockings in a soap solution, and obtained satisfactory results. Mr. Carpenter then agreed to finance an application for letters patent, and an application for patent was filed on June 21, 1922, being serial No. 570,036, for improvement in methods of treating silk.

The method described in the specification is for treating the silk thread while in skeins or in any other loose form with a solution of alum of 5 to 10 per cent. in strength, this

to be followed, after drying, with the weaving of the stocking, and, after weaving, with washing in a soap solution, so that the soap will react with the alum in the threads to form an aluminum stearate, to increase the sheer and the wearing quality of the fiber.

On August 7, 1922, Mendelsohn assigned to Carpenter and Charles D. Levin each an equal one-third ownership in the chemical formula, to be used for the treatment of silk stockings or other silk fabrics. The parties agreed to form a corporation for the purpose of acquiring all rights to the formula, all patents to be issued thereunder, and to manufacturing articles in connection therewith. The Carpenter Chemical Company having been organized, Carpenter, Levin, and Mendelsohn entered into an agreement with the Carpenter Chemical Company by which, after reciting that the assignors are the proprietors of a certain formula or method of manufacturing a certain useful and marketable chemical formula for the treatment of silk stockings and silk fabrics, which is known under the name of "Keepit," they assigned the exclusive right to the method of manufacture, and the chemical formula known as "Keepit," to manufacture or otherwise market the same, and all rights of patent or trade-mark or registration whatever, and agreed that they would not disclose the secret of the composition or the formula, and would not make or compound for sale, or be in any way interested in compounding for sale or selling, the said chemical formula, or anything of a similar nature assigned for a like purpose.

On August 28, 1922, Mendelsohn assigned to the Carpenter Chemical Company the full and exclusive right to the invention set forth in his application for patent filed June 21, 1922, and the assignment was duly recorded in the Patent Office. On September 15, 1922, the Carpenter Chemical Company filed its application in the Patent Office for the registration of the trade-mark in the word "Keepit," for a chemical preparation used to treat silk to prolong its wearing quality, which was duly registered on May 8, 1923.

The Carpenter Chemical Company then made a contract with Lehn & Fink, Inc., of New York, to manufacture and distribute the chemical compound to the trade. Some time in the spring of 1923, one A. L. Ullman, who was the New York agent or representative of the defendant, the Lansdale Silk Hosiery Company, entered into a contract, with plaintiff's approval, with Lehn & Fink to act as exclusive salesman to the manufacturers of silk hosiery in connection with the use and

invention of the chemicals employed by the plaintiff.

On May 15, 1923, the defendant entered into an agreement with Lehn & Fink to purchase not less than 400 pounds of "Keepit" per month for a period of 12 months, and agreed to treat all of the silk stockings manufactured by it in accordance with the method set out in the directions supplied with "Keepit."

The article known as "Keepit," prepared in accordance with the formula invented and owned by Mendelsohn, was put up in packages for sale by retailers, with directions for its use which are substantially similar in method to that set out in the specification for the patent issued July 21, 1924. They contain the following directions, which are pertinent:

"(1) Dissolve the entire contents in one quart of warm water. (2) Soak the hose in the whole solution for at least half an hour. (3) Hang up and dry thoroughly. (4) After drying, and before wearing, wash with any good soap. (5) Rinse in warm clean water. This will leave the stockings sheer, soft, and lustrous."

It also contains the inscription, under the trade-mark: "Prevents runs in silk hose. Life insurance for silk stockings."

After Ullman obtained the right to act as exclusive salesman, to the manufacturers of silk hosiery, of the invention, and the defendant had made the yearly contract above referred to, the latter proceeded to advertise that its hosiery or silk stockings were treated with "Keepit" and to extol the merits thereof, and Mendelsohn visited the defendant's plant and gave instructions as to the practice and method of the invention.

At the end of the yearly agreement with Ullman on May 3, 1923, and that with the defendant on May 15, 1923, the agreements were not renewed. On April 3, 1924, Mendelsohn, being vice president and director of the plaintiff corporation, filed through the same patent attorney who had represented him in his application of June 21, 1922, an application for the patent, upon which patent No. 1,500,026 was issued on July 1, 1924. With this application was filed a petition to the Commissioner that it be made special, which petition was granted.

Meanwhile, the application filed June 21, 1922, had been allowed to lag. There had been rejection of some claims, and amendments filed thereto, with the result that, when patent No. 1,500,026 was issued, the patent for which the first application had been made was still pending. Mendelsohn assign-

2 F.(2d)—62

ed the patent on his second application to the defendant in consideration of $5,000. The plaintiff, having canceled the original power of attorney, filed a power of attorney to other patent attorneys, who filed amended claims covering substantially those allowed under the second application, which were refused upon the ground that their allowance would result in double patenting.

The principal contention of the plaintiff is that the invention protected by the issued patent is the same as that described in the first application. The first application covered the method of treating silk in the thread or skein with the alum solution, and subsequently, after the weaving into hose, of treating the woven article in the soap solution. The patent issued describes a method of treating the hose after manufacture in both solutions. The defendant earnestly contends that there is sufficient difference in the two methods to establish two separate inventions, and that the disclosures in the patent are not the same as those of the rejected prior application.

This is not the view of the Patent Office. The record of the case in the file wrapper shows that the Examiner on September 19, 1923, rejected certain claims, stating: "It is held to be immaterial whether the process is carried out while the fiber is still in the thread form or after it is made into a fabric." And this was reiterated by the Examiner on September 2, 1924, in response to a communication of the substituted patent attorneys for the plaintiff, calling the Commissioner's attention to the facts concerning Mendelsohn's assignment of his earlier application and invention to the plaintiff, nearly two years prior to the later application under which the patent was assigned to the defendant.

The disclosures in the specifications of the two applications are identical in most respects. The only marked distinction in the description is in the one fact that the first application provides for the washing of the silk in skeins or threads prior to weaving into fabric or hosiery and the treatment of the manufactured article afterward in the soap solution, while the specifications in the second application and the claims are for washing the stockings in the two solutions after they are woven.

[1] The case as now presented on motion for preliminary injunction sufficiently establishes for the purposes of the motion that the invention of Mendelsohn, as disclosed in his second application, is substantially the same as that followed in the use of "Keepit" under the directions contained on the wrapper of that article, and followed by the defendant in its plant in the use of "Keepit," while obtaining its supply under its yearly contract through Lehn & Fink's contract with Ullman. I see no reason to differ from the ruling of the Patent. Office that it is immaterial, so far as the invention is concerned, whether the process for coating the threads of which the stockings are woven with the alum hardening solution, for the purpose of preventing the pulling out of the fibers and incorporating them more closely with the thread, and thereafter fixing the alum with the soap solution, is carried out while the fiber is still in the thread form, or after it is woven into a fabric.

A further contention on the part of the defendant is that the solution of the first application, which was described as a solution of alum, is not identical with that used in the second application, because in the latter the applicant refers to the use of amonium alum, although potassium . alum might be employed, and the original application refers to the preferable use of ordinary potassium alum. I think this distinction must be rejected on the doctrine of equivalents.

On the prima facie case made out by the evidence before me, the plaintiff has established to my satisfaction that Mendelsohn's invention, covered in his second application and in the defendant's patent is the same invention assigned to the plaintiff and used by it with Mendelsohn's acquiescence and consent in its direction to the public for the use of "Keepit" and in the first application. Mendelsohn's conduct shows an intention on his part for his own gain to place in the hands of the defendant what he had already sold to the plaintiff. The circumstances connected with the dilatory conduct of the proceedings under the first application and the eagerness to obtain a patent at once under the second application, the conduct of Ullman and of the defendant in the use of "Keepit," in connection with Ullman's exclusive right for its sale to manufacturers, are not, while unexplained, such as to create an impression of the utmost good faith.

The rejection of the new claims 2, 3, and 4 by the Patent Office is upon two grounds: First, because they are drawn to new matter, inasmuch as the application, as originally filed, described only the treatment of threads, while these claims are drawn to the treatment of fabric. This is somewhat inconsistent with the holding of the Patent Office

that it is immaterial whether the process is carried out while the fiber is still in thread form or after it has been made into fabric. These claims, together with new claim 1, are also rejected on the patent to Mendelsohn, No. 1,500,026. While the Examiner reiterates in this rejection his holding of immateriality as to when the process was carried out, it is indicated with some force that, if the Mendelsohn patent had not been allowed, the plaintiff would have been entitled to a patent on claims for carrying out the process on the thread before being formed into a fabric, which, if applied for in time, would have anticipated the claims allowed on the later application. Upon the showing here made, the plaintiff is entitled to a preliminary injunction restraining the defendant from selling, assigning, or in any manner whatsoever incumbering the right or title to the patent it holds by assignment from Mendelsohn and the invention thereof pending the determination of the suit.

Upon the facts shown by ex parte affidavits on motion for preliminary injunction, and taking into consideration the question of irreparable injury, I am not convinced that a preliminary injunction should issue, except from such acts as would properly be construed as threatening and intimidating the plaintiff's customers. So far as appears from the evidence, no threats which justify the interference of the court have been made.

[2] As prima facie the evidence shows that the defendant is financially responsible, and a preliminary injunction, if the defendant should prevail on final hearing, would no doubt cause it irreparable injury, the injunction will not prohibit the defendant from practicing the invention. As to licensing or granting to others the right to practice the invention, the defendant will be enjoined, with the right, however, to apply for modification of such clause in the injunction order, if occasion should arise. The amount of injunction bond will be fixed upon application.

Counsel may present a decree in accordance with this opinion.